***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** ISSUES *Page 2 
1. Has plaintiff reached maximum medical improvement?
2. What, if any, additional medical treatment or financial compensation is due?
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The date of the injury for this claim is December 26, 2001.
2. On that date the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On that date, the Employer-Employee relationship existed between the Employee-Plaintiff and the Employer-Defendant.
4. On that date, the Employer-Defendant employed three (3) or more employees.
5. On that date, the Employer-Defendant was self-insured.
6. Plaintiff's average weekly wage is $563.38.
7. Pursuant to a Form 21 Agreement dated April 8, 2004 and approved by the Industrial Commission on April 21, 2004, defendant paid plaintiff the sum of $12,351.55 for temporary total disability from January 20, 2003 to September 2, 2003.
8. Plaintiff returned to work for defendant on September 2, 2003. Since that time, he has earned as much or greater than his pre-injury average weekly wage of $563.38.
9. Plaintiff's Form 18M Application was approved by Order of Executive Secretary Tracey H. Weaver filed on March 24, 2005.
10. The parties participated in a mediated settlement conference on January 17, 2006. Defendant has paid the entire mediation fee in the amount of $612.50. Pursuant to Rule 7(c) of *Page 3 
the Rules for Mediated Settlement and Neutral Evaluation Conferences of the North Carolina Industrial Commission, defendant is entitled to a credit in the amount of $306.25 for payment of plaintiff's share of the mediation costs, and defendant may withhold funds from any award for this purpose.
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing of this matter, plaintiff was a 54 year-old male, who began working for defendant in 1977. At the time of hearing, he continued to be employed in a full-time capacity by defendant.
2. The July 28, 2008 Order of the Full Commission is incorporated herein by reference.
3. Plaintiff sustained an admittedly compensable injury by accident on December 26, 2001, when he slipped on some graphite on the floor and landed on his tailbone. Plaintiff continued to work until January 20, 2003, when he went out of work. He returned to work on September 2, 2003. Since returning to work, he has earned as much or more than his pre-injury average weekly wage of $563.38.
4. After plaintiff was injured, he treated with his family doctor, Dr. Mark McManus. In 2002, plaintiff began to treat with Dr. David Jones, a neurosurgeon. Plaintiff had an MRI. He also had x-rays and a CT scan of his pelvic area, both of which were normal. Beginning in 2003, plaintiff was referred to Dr. James Hoski at Spine Carolina.
5. Dr. Hoski began directing plaintiff's medical treatment. Dr. Hoski testified that *Page 4 
plaintiff's lower back injury was a sprain/strain, and that plaintiff did not sustain a disc injury, a fracture, or a nerve injury.
6. In February 2004, Dr. Hoski referred plaintiff to Dr. Laura Fleck, a neurologist in his practice for non-surgical, rehabilitative treatment. On March 31, 2004, Dr. Fleck referred plaintiff for diagnostic injection blocks at the pain clinic. As a result, on July 9, 2004 and in August of 2004, plaintiff received these injections.
7. On September 29, 2004, Dr. Hoski opined that plaintiff had reached maximum medical improvement, and that plaintiff had a three percent (3%) permanent partial disability rating to his back. Dr. Hoski explained that maximum medical improvement is reached "when an underlying medical condition has plateaued [sic] and is not expected to change within a three percent impairment within a twelve-month period." He testified that the three percent (3%) rating was in compliance with the Industrial Commission's published guidelines. At the time, plaintiff was back at work without restrictions earning at or more than his pre-injury wage.
8. In August of 2005, plaintiff returned to Dr. Hoski, who referred plaintiff for more testing. Plaintiff underwent further MRI studies of his lumbar spine. Dr. Hoski referred plaintiff to Dr. McGhee in September of 2005 for EMG testing. After reviewing this information, Dr. Hoski opined that plaintiff might benefit from pain management, and defendant authorized plaintiff to treat with pain specialist Dr. Hans Hansen, which plaintiff has participated in at defendant's expense.
9. Dr. Hoski reiterated his opinion that plaintiff had reached maximum medical improvement, and he again assigned plaintiff a 3% rating on August 29, 2006. Dr. Hans Hansen did not disagree with the 3% rating, and he stated that plaintiff is "pretty much at MMI."
10. On April 30, 2007, defendant authorized a one-time second opinion evaluation on *Page 5 
plaintiff's rating with Dr. O. Del Curling. Dr. Curling reviewed multiple x-rays and MRI's of plaintiff's lower back, which he stated were "relatively unremarkable" except for some mild degeneration that is "not unexpected for a male his age." Dr. Curling found no nerve root compression or any obvious explanation for his pain. Dr. Curling did note some herniation at L4-5 that he classified as an "unrelated finding." He also noted some mild stenosis that he stated was expected for a male plaintiff's age, was likely due to degenerative changes, and was not likely symptomatic or accountable for plaintiff's pain.
11. Dr. Curling suggested after his first visit that plaintiff might have meralgia paresthetica resulting from a potential nerve injury, which he said might be treated by a further series of injections. However, after plaintiff returned to Dr. Curling at his own expense on July 18, 2007, Dr. Curling stated that plaintiff presents with new leg symptoms extending below his calf, which Dr. Curling opined was inconsistent with meralgia, and that he would no longer pursue treatment of meralgia if those symptoms were true. Dr. Curling agreed that plaintiff's condition had plateaued, but felt that he may have some room for further improvement. Plaintiff testified that he is unwilling to undergo any surgical procedures.
12. Dr. Curling was of the opinion that Plaintiff's work-related injury was multi-factorial, and as such, additional treatment measures may be necessary to improve Plaintiff's condition. Thus, Dr. Curling felt that a permanent partial disability rating, at that time, would be premature, since Plaintiff may have further improvement of his symptoms. However, Dr. Curling was unable to diagnose Plaintiff's condition, partially due to inconsistency between Plaintiff's subjective complaints and Dr. Curling's objective findings. Defendant presented evidence tending to show that this inconsistency between Plaintiff's subjective complaints and Dr. Curling's objective findings was due to Plaintiff's symptom magnification. *Page 6 
13. Due to the inconsistency between Dr. Hoski and Dr. Curling with respect to whether Plaintiff was at maximum medical improvement and whether he needed additional medical treatment which could improve his symptoms and impact his rating, the Full Commission reopened the record and ordered that plaintiff undergo an independent medical examination by a physician upon which the parties agreed. When the parties could not agree upon a physician, the Industrial Commission Nurses' Section ultimately found and scheduled a physician to conduct the independent medical examination. Dr. Henry J. Elsner, a neurosurgeon, performed the independent medical examination on October 28, 2009. His report is admitted into evidence.
14. Dr. Elsner's impression was that plaintiff had "evidence of chronic numbness and discomfort in the right lower extremity radiating down the anterior thigh but then proceeding down to the anterior boarder [sic] of the leg and the foot." He was of the opinion that plaintiff's symptoms appeared more consistent with sciatica and that "it may be from direct injury to the sciatica nerve itself." He recommended conservative treatment, rather than surgery. He was of the opinion that plaintiff will likely have to "put up with a permanent degree of numbness and discomfort in the right lower extremity to some degree as he has been doing at this point." He agreed with the 3% permanent partial impairment rating of Dr. Hoski and the prior work restrictions. 15. Based upon the opinions of Dr. Hoski and Dr. Elsner, the Full Commission finds as fact that plaintiff reached maximum medical improvement on September 29, 2004, with a three percent (3%) permanent partial disability of his back.
16. The Full Commission does not find that plaintiff needs a change in treating physicians. *Page 7 
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff has reached maximum medical improvement.Knight v. Wal-Mart Stores,149 N.C. App. 1, 10, 562 S.E.2d 434, 442 (2002).
2. Plaintiff has a three percent (3%) permanent partial disability of his back as a result of his compensable injury by accident. N.C. Gen. Stat. § 97-31(23).
3. Defendant is entitled to a credit in the amount of $306.25 for payment of plaintiff's share of the mediation costs.
4. Defendant is entitled to continue to direct plaintiff's ongoing medical treatment pursuant to the Form 18M previously approved in this matter through its selection of plaintiff's authorized treating physicians. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff the sum of $3,380.45, less $306.25 for defendant's payment of plaintiff's portion of the mediator's fee, resulting in a net payment of $3,074.20, subject to the attorney's fee awarded below.
2. Defendant shall continue to provide to plaintiff all reasonably required medical treatment related to his compensable injury pursuant to the 18M. *Page 8 
3. Plaintiff's counsel is awarded twenty-five percent (25%) of plaintiff's net award of $3,074.20, or $768.55, as a reasonable attorney's fee.
4. Each side shall bear its own costs.
This the 21st day of September 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1